WILLIAM FERNSCHILD, Appellant, *v.* D. G. YUENGLING BREW-
ING COMPANY; COMMODORE P. VEDDER, as Receiver of the
D. G. YUENGLING BREWING COMPANY, Substituted Defend-
ant, Respondent.

CORPORATIONS — REORGANIZATION — PROVISION FOR OUTSTANDING
MORTGAGE BONDS.  Upon a reorganization of an insolvent corporation,
which had bonds outstanding secured by a second mortgage on its realty,
the successor corporation acquired the realty through foreclosure of a
prior mortgage.  By the reorganization agreement, the new company
agreed to provide for the outstanding bonds by issuing new ones in their
stead, at a lower rate of interest, to assenting bondholders, and by a dis-
tribution, to non-assenting bondholders, of their distributive share in the
proceeds of the sale of the mortgaged property.  The directors of the
new company adopted a resolution, to the effect that it assumed all the
debts and obligations of the old company, "in addition to the bonds and
other obligations mentioned in the agreement of reorganization," in con-
sideration of a transfer of the old company's personal property.  A bill
of sale from the old company, of all its property except that covered by
the mortgage, was then delivered to the new company, in which it was
stated that, in consideration of such transfer, the new company assumed
the payment of all the debts and obligations of the old company, except-
ing its mortgage bonds, and excepting all other indebtedness, otherwise
provided for in the agreement of reorganization.  *Held,* that the new com-
pany did not assume the payment of the old mortgage bonds.
   *Fernschild* v. *Yuengling Brewing Co.*  15 App. Div. 29, affirmed.

   (Argued December 13, 1897; decided January 11, 1898.)

APPEAL, by permission, from a judgment of the Appellate
Division of the Supreme Court in the second judicial depart-
ment (in a case transferred from the first department), entered
March 16, 1897, reversing a judgment of the Appellate Term
of the Supreme Court in the first judicial district in favor of
plaintiff and affirming a judgment in favor of defendant, ren-
dered by the General Term of the City Court of the city of
New York.

   This action was brought against the D. G. Yuengling Brew-
ing Company to recover on bonds executed by the D. G.
Yuengling, Jr., Brewing Company, the predecessor of the
defendant company, the payment of which the plaintiff claims
was assumed by the latter company.

The defendant corporation having been dissolved, Commodore P. Vedder was appointed receiver, and was duly substituted as defendant while the appeal to the Court of Appeals was pending.

The facts, so far as material, are stated in the opinion.

*George P. Hotaling* for appellant. The Appellate Division erred in holding that the bill of sale could not be varied by the resolution. (*Brady* v. *Nally,* 151 N. Y. 258; *Hankinson* v. *Vantine,* 152 N. Y. 20; *Higgins* v. *Ridgway,* 153 N. Y. 130; *Blewitt* v. *Boorum,* 142 N. Y. 357; *C. Nat. Bank* v. *Faurot,* 149 N. Y. 537.) The intent clearly appears to assume all the debts so as to get a good title to the unmortgaged assets. The intent is found, not by a mere inspection of one clause in the bill of sale, but of all the papers and acts and by considering the situation and relations of the parties and the subject-matter of the negotiations and the surrounding circumstances. (*Clark* v. *Devoe,* 124 N. Y. 120; *Blackman* v. *Striker,* 142 N. Y. 555; *Coyne* v. *Weaver,* 84 N. Y. 386; *Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *E. Bank* v. *Roche,* 93 N. Y. 374.) The bill of sale was not the agreement. It was tendered as a transfer of title only on a condition which was accepted by the defendant passing the resolution. The contract, therefore, really consists of the bill of sale, the condition imposed as to delivery, and the resolution of acceptance by the defendant. (Jones on Com. Cont. § 229; *Rothschild* v. *R. G. R. R. Co.,* 84 Hun, 103.) If the facts and writings permit of two interpretations, one of which would render the transfer invalid, and the other valid, the latter construction will always be deemed the true one, and be adopted by the courts. (*Coyne* v. *Weaver,* 84 N. Y. 386; *Darrow* v. *Family F. Society,* 116 N. Y. 537; *Belden* v. *Burke,* 72 Hun, 51; *Hobbs* v. *McLean,* 17 U. S. 567; *Cole* v. *M. I. Co.,* 133 N. Y. 164; *People* v. *Ballard,* 134 N. Y. 269.) If there is any reasonable doubt as to the meaning of the writings, it is to be construed most favorably to the creditors, because the defendant procured the bill of sale and passed the

resolution by which it got possession and title to the property, and is responsible for the language used. When the words of a promise may have been used in an enlarged or restricted sense, they are generally to be construed in the sense most beneficial to the promisee. (*Rothschild* v. *R. G. R. R. Co.*, 84 Hun, 103 ; *Jackson* v. *B. W. Co.*, 91 Hun, 435 ; *Halpin* v. *Ins. Co.*, 120 N. Y. 73 ; *Belden* v. *Burke*, 72 Hun, 51 ; 32 N. Y. 405.) The statute law as to the reorganization of corporations does not aid this defendant. (L. 1892, ch. 691, §§ 3, 4.) The plaintiff's bonds were not merged in the foreclosure judgment. It is conceded that they were payable only to the plaintiff and not to the trustee, and the mortgage contained no covenant to pay the principal or interest to the trustee. This suit, however, is based really upon an agreement of assumption, made after the foreclosure judgment was entered. (*Bowdish* v. *Page*, 153 N. Y. 104 ; *F. Nat. Bank* v. *Shuler*, 153 N. Y. 170.) The reversal by the Appellate Term and order for judgment for plaintiff without a new trial was correct, as the defendant's liability depends solely upon the interpretation of undisputed writings and records. On the appeals below defendant conceded that only an issue of law was involved. (*Stewart* v. *Arendt*, 16 Misc. Rep. 45 ; *Wood* v. *Baker*, 60 Hun, 337 ; *Van Slooten* v. *Wheeler*, 21 N. Y. Supp. 329 ; *Bradley Co.* v. *S. B. Co.*, 4 Misc. Rep. 172 ; *Price* v. *Price*, 33 Hun, 434 ; *Brackett* v. *Griswold*, 128 N. Y. 644 ; *King* v. *Barnes*, 109 N. Y. 267.) The plaintiff on reversal should have restitution of his rights under the execution and levy, lost by reason of the erroneous judgment of the Appellate Division. (Code Civ. Pro. § 1323 ; *King* v. *Harris*, 34 N. Y. 330 ; *Gillig* v. *Treadwell Co.*, 151 N. Y. 552 ; *Murray* v. *Berdell* 98 N. Y. 480 · *Carlson* v. *Winterson* 146 N Y. 345.)

*Samuel Untermyer* and *Moses Weinman* for respondent. The defendant did not assume the bonds of the D. G. Yuengling, Jr., Brewing Company. The clear intent was that they should not be assumed. (Cook on Corp. Law, § 886 ; *Matter*

of *Hermance*, 71 N. Y. 481; *People* v. *N. Y. & M. B. R. Co.*, 84 N. Y. 565; *People* v. *Richards*, 108 N. Y. 137.) The defendant is a corporation organized under the statute permitting the reorganization of old corporations. Under this statute, the powers of a new corporation are limited to the plan of reorganization. The defendant, therefore, had no power to agree to pay the plaintiff's bonds. (L. 1892, ch. 688.) The bonds sued upon and all the plaintiff's rights are merged in the judgment procured by the Farmers' Loan and Trust Company, as trustee for all the bondholders. (Freeman on Judgments, §§ 215, 216; *G. P. & R. M. Co.* v. *Mayor*, *etc.*, 108 N. Y. 276; *Mallory* v. *Leech*, 14 Abb. Pr. 449; *Kerr* v. *Blodgett*, 48 N. Y. 62.)

O'BRIEN, J. The plaintiff owned two one-thousand dollar bonds issued by a corporation to which the defendant succeeded by a process of reorganization. The name of the corporation that had issued the bonds differed from that of the defendant only in the use of the word " junior " after the name of the person from whom both corporations derived their name. The old company was insolvent and a committee of the bondholders were engaged in reorganizing it under the statute. The plaintiff's bonds are part of an issue of $1,258,000 by the old company secured by a second mortgage upon the plant of a brewery. The prior liens amounted to over $302,000, and were in process of foreclosure, thus imperiling the only security that the plaintiff and his fellow-bondholders had for the payment of their obligations.

The plan of the committee was to purchase the property at the foreclosure sale, organize a new company, scale down the second mortgage bonds, issuing new ones in their place secured by mortgage from the new company. It, of course, required the assent of the bondholders, and was reduced to writing and signed by the owners of $1,202,800 of the bonds. The plaintiff and a few others, owning in all about $56,000 in bonds, refused to sign or, at least, did not sign.

The agreement provided that the bondholders should sur-

render their bonds and take bonds of the new company equal to seventy-five per cent of the face value of the bonds surrendered, and, in addition, twenty-five per cent of the face value in stock of the new corporation.

The agreement further provided that in case any of the bondholders withheld their consent from the agreement, that then the new bonds issued against the old bonds of such non-assenting parties should be sold or used by the committee to pay the parties not consenting the distributive share of the proceeds of the sale of the property to which they might be entitled.

At the foreclosure sale the committee purchased the property covered by the mortgage, but this did not include the personal property, accounts and some other assets of the old company. The plant was transferred to the new company, the defendant, but the personal property had to be acquired by the new company in some other way. Besides the bonded debt the old company had a large floating indebtedness, represented by notes and open accounts. The committee arranged to have this debt assumed by the new company upon a transfer to it of the personal property, notes and accounts by the old company, and a bill of sale of the property was prepared and executed in order to effectuate that purpose. Before this bill of sale was finally delivered the directors of the new company, the defendant, passed the following resolution :

" *Resolved*, That this company assume all the debts, obligations and liabilities of every kind and description of the D. G. Yuengling, Jr., Brewing Company, in addition to the bonds and other obligations mentioned in the agreement of reorganization, and thereby provided to be assumed by this company, and that in return for, and as a consideration of, the assumption of said debts, obligations and liabilities, this company accept from said D. G. Yuengling, Jr., Brewing Company the bill of sale presented by the chairman transferring unto this company all the personal property, effects and chattels of every kind, including the stock in trade, book

accounts and good will of said D. G. Yuengling, Jr., Brewing Company, not included in the property covered by the trust mortgage given by said company to the Farmers' Loan and Trust Company to secure bondholders, and not heretofore acquired by this company, the intent hereof being to vest in this company all the property, right, franchises, privileges and good will of the old company, and to assume all the obligations and debts of that company, so that this company shall in all respects stand in the place and be the successor of, and so far as may be, the same corporate body as the said D. G. Yuengling, Jr., Brewing Company aforesaid."

The bill of sale was then delivered. It was executed by the old company, as party of the first part, to the defendant, as party of the second part, and conveyed and transferred to the latter all property not covered by the mortgage given to secure the old bonds, which mortgage, as we have seen, had been foreclosed, and the property embraced in it sold to the new company.

This bill of sale, however, contained the following clause:

"And the party of the second part doth hereby covenant and agree that, in consideration of said transfer as aforesaid, it will assume and doth assume the payment of all the debts and obligations of the party of the first part, excepting the mortgage bonds of said party of the first part, and excepting all other indebtedness, otherwise provided for in a certain plan or agreement of reorganization of the said party of the first part pursuant to the terms of which the party of the second part was organized."

The plaintiff has brought this action at law upon the old bonds held by him on the theory that, under the resolution referred to, or the clause above quoted from the bill of sale, or both read together, the defendant has assumed the payment of the bonds and bound itself to pay them. We are not now concerned with any question with respect to the validity of the transfer by the old company to the new of the remaining property of the corporation. Whether it was open to the plaintiff, as a creditor of the old company, to attack

the transfer under the doctrine of *Cole* v. *M. I. Co.* (133 N. Y. 164), is a question not at all involved in the case. It is. quite sufficient to say that this is not an action for that purpose. The only question before us is one of construction. Did the defendant contract with the old company to pay the plaintiff's debt? That question should be determined by an inquiry as to the intention of the parties derived not only from the language of the resolution and the assumption clause in the bill of sale, but the purpose which was in view and all the surrounding circumstances. If it assumed any of the old bonds it assumed them all. This, of course, would have defeated the very purpose of the reorganization. The old company was insolvent and the purpose was to scale down the bonded debt and reduce the rate of interest ; but if the contention of the learned counsel for the plaintiff be correct, the new company at its very birth was in a worse financial condition than the old. It had assumed all the debts of the old company and had no additional property to pay them. It had simply acquired the property of the old company through the expensive process of foreclosure and then proceeded to make itself insolvent by assuming all of its debts. Of course nothing of that kind could have been intended, and no such idea is expressed either in the bill of sale or the resolution. The language there used is not very clear, but if we consider what took place before they were drawn and what all the parties were seeking to accomplish, there can be no doubt with respect to the meaning.

By the terms of the assumption clause in the bill of sale the defendant agreed, in consideration of the transfer of the personal property, to pay all the debts of the old company, excepting the mortgage bonds and all other indebtedness otherwise provided for in the reorganization agreement.

Now, all the old bonds had been provided for by that agreement, since they were to be retired and new bonds and stock taken in their place. It is true that the plaintiff did not assent to the agreement, but that circumstance has no weight in the construction of the language used in the bill of sale.

85

Whether the plaintiff assented or not, provision was made in the agreement for his bonds, since, in case of his non-assent, he was to be paid his proportionate share of the proceeds of the sale of the property, which was his only security. The debts, then, which the defendant assumed were the floating debts of the old company, which could have been collected only from the personal property transferred by the bill of sale. Those debts were not otherwise provided for, and they alone are within the scope and intention of the assumption clause.

The same debts and no others are referred to in the resolution. The defendant there assumed " all debts, obligations and liabilities of every kind and description * * * in addition to the bonds and other obligations mentioned in the agreement of reorganization, and thereby provided to be assumed by this company."

The meaning of this clause is that the defendant had assumed the old bonds in the manner stated in the reorganization agreement, that is, by issuing new bonds and stock to take their place, and was to assume the floating debt generally as the consideration for the transfer of the personal property, since that was the only debt not otherwise provided for.

The defendant doubtless became bound by the terms of the bill of sale on accepting it, though executed only by the old company, but not bound beyond its fair scope and meaning. There is really no ground for the contention that the defendant assumed or intended to assume the payment of the plaintiff's bonds in the sense claimed. The only way that it agreed to assume them was by the issue of new bonds and stock to take their place, and this method of payment the plaintiff declined to accept.

We think that the case was correctly decided below, and the judgment appealed from should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.